CONSOLE LAW OFFICES LLC
James M. Duttera
110 Marter Ave., Suite 105
Moorestown, PA 08057
(856) 854-4000
(856) 854-4006 fax)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL JACKSON<br>Ocean View, NJ 08230<br><br>      Plaintiff,<br><br>  v.<br><br>TRUMP ENTERTAINMENT<br>RESORTS, INC.<br>1000 Boardwalk at Virginia Ave.<br>Atlantic City, NJ 08401<br><br>TRUMP ENTERTAINMENT<br>RESORTS HOLDINGS, LP<br>1000 Boardwalk at Virginia Ave.<br>Atlantic City, NJ 08401<br><br>TRUMP MARINA ASSOCIATES, LP<br>1000 Boardwalk at Virginia Ave.<br>Atlantic City, NJ 08401<br><br>LANDRY'S RESTAURANTS, INC.<br>1510 West Loop South<br>Houston, TX 77027<br><br>LANDRY'S GAMING, INC.<br>1510 West Loop South<br>Houston, TX 77027<br><br>LANDRY'S A/C GAMING, INC.<br>Huron and Brigantine Blvd.<br>Atlantic City, NJ 08401<br>      Defendants. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

## I. PRELIMINARY STATEMENT

Plaintiff, Michael Jackson, brings this action against Defendants for violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), the Age Discrimination in Employment Act, 28 U.S.C. §621, *et seq.* ("ADEA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). Defendants denied Plaintiff's request for a reasonable accommodation, then terminated his employment because of his disability, age, request for an accommodation, and complaints of discrimination. Plaintiff seeks damages, including economic loss, compensatory damages, liquidated damages, punitive damages, and all other relief under the federal and state laws prohibiting disability discrimination in employment and as this Court deems appropriate.

## II. PARTIES

1. Plaintiff Michael Jackson is an individual and citizen of the State of New Jersey, residing therein in Ocean View, NJ 08230.

2. Defendant Trump Entertainment Resorts, Inc. is a Delaware business corporation with corporate headquarters and/or a principal place of business located at 1000 Boardwalk at Virginia Ave., Atlantic City, NJ 08401.

3. Defendant Trump Entertainment Resorts Holdings, LP is a Delaware limited partnership with corporate headquarters and/or a principal place of business located at 1000 Boardwalk at Virginia Ave., Atlantic City, NJ 08401.

4.     Defendant Trump Entertainment Resorts, Inc. is the sole general partner in Defendant Trump Entertainment Resorts Holdings, LP.

5.     Defendant Trump Marina Associates, LP is a New Jersey limited partnership with a corporate headquarters and/or a principal place of business located at 1000 Boardwalk at Virginia Ave., Atlantic City, NJ 08401.

6.     Defendants Trump Entertainment Resorts, Inc., Trump Entertainment Resorts Holdings, LP, and Trump Marina Associates, LP (together, "Trump Defendants"), collectively owned and operated the Trump Marina Casino, located at Huron & Brigantine Blvd., Atlantic City, NJ 08401 (hereinafter "Marina") until on or about May 25, 2011.

7.     At all times material hereto, Landry's Restaurants, Inc., was a Delaware corporation with corporate headquarters and/or a principal place of business located at 1510 West Loop South, Houston, TX 77027.

8.     At all times material hereto, Landry's Gaming, Inc., was a Nevada corporation with corporate headquarters and/or a principal place of business located at 1510 West Loop South, Houston, TX 77027.

9.     At all times material hereto, Landry's A/C Gaming, Inc., was a New Jersey corporation with corporate headquarters and/or a principal place of business located at Huron & Brigantine Blvd., Atlantic City, NJ 08401.

10.    Defendant Landry's Gaming, Inc. is a subsidiary of Defendant Landry's Restaurants, Inc.

11.    Defendant Landry's A/C Gaming, Inc. is a subsidiary of Defendant Landry's Restaurants, Inc.

12. Since on or about May 25, 2011, Defendants Landry's Restaurants, Inc., Landry's Gaming, Inc., and Landry's A/C Gaming, Inc. (together, "Landry's Defendants"), have collectively owned and operated the Marina.

13. Since on or about May 25, 2011, the Landry's Defendants have conducted interstate commerce in New Jersey at Huron & Brigantine Blvd., Atlantic City, NJ 08401.

14. The Landry Defendants purchased the Marina from the Trump Defendants, effective on or about May 25, 2011, and are the successors in interest to the Trump Defendants, and are responsible for the Trump Defendants' employment practices at the Marina, and any liabilities arising therefrom because the Landry's Defendants' purchase the Marina amounted to a consolidation or merger and/or a continuation of the business of the Trump Defendants.

15. At all relevant times, the Trump Defendants have acted as a single employer, joint employers, and/or alter-egos.

16. At all relevant times, the operations of the Trump Defendants have been substantively consolidated.

17. At all relevant times, the Trump Defendants operated as a single employer, owning, operating, and running the Marina.

18. At all times material hereto, the Trump Defendants acted as an "employer" within the meanings of the statutes which give rise to this action.

19. At all relevant times since on or about May 25, 2011, the Landry's Defendants have acted as a single employer, joint employers, and/or alter-egos.

20. At all relevant times since on or about May 25, 2011, the operations

of the Landry's Defendants have been substantively consolidated.

21. At all relevant times since on or about May 25, 2011, the Landry's Defendants operated as a single employer, owning, operating, and running the Marina.

22. At all times material hereto, the Landry's Defendants acted as an "employer" within the meanings of the statutes which give rise to this action.

23. At all times material hereto prior to May 25, 2011, Plaintiff was an employee at the Marina within the meanings of the statutes which give rise to this action.

24. At all times material hereto, the Trump Defendants employed more than fifteen (15) individuals.

25. At all times material hereto, the Landry's Defendants employed more than fifteen (15) individuals.

### III. JURISDICTION AND VENUE

26. The causes of action set forth in this Complaint arise under the ADA, as amended, 42 U.S.C. §12101, *et seq.*, the ADEA, as amended, 28 U.S.C. § 621, and the NJLAD, as amended, N.J.S.A. 10:5-1.

27. The District Court has jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331. The District Court has supplemental jurisdiction over Count III pursuant to 28 U.S.C. § 1367.

28. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

29. On or about March 18, 2011, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") to initiate the charge-filing process, ultimately filing a completed charge. On or about December 15, 2011, Plaintiff filed an amended Charge of Discrimination ("Amended First Charge"), a true and correct copy of which is attached hereto as Exhibit "A," complaining of the acts of age discrimination and retaliation set forth herein.

30. On or about December 15, 2011, plaintiff filed a second Charge of Discrimination with the EEOC ("Second Charge"), a true and correct copy of which is attached hereto as Exhibit "B," complaining of the acts of age discrimination and retaliation set forth herein.

31. On or about March 12, 2013, the EEOC issued to Plaintiff a notice of right to sue on the Amended First Charge and on the Second Charge, true and correct copies of which is attached hereto as Exhibit "C."

32. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

### IV. FACTUAL ALLEGATIONS

33. Plaintiff was hired to work as a dealer at the Marina (originally called Trump's Castle) on or about May 28, 1985.

34. In or about 1995, Plaintiff was promoted to the position of "dual-rate floorperson," the position he held until his termination.

35. As a dual-rate floorperson, Plaintiff would work some shifts as a dealer and some shifts as a floorperson (the position which supervises dealers).

36. As of 2011, Plaintiff worked on the Grave shift. The Shift Manager

for Grave was George Wilson. Mr. Wilson reported to Karen Lew, Casino Manager, who reported to Donald Brown, President.

37. At all times, Plaintiff performed his job duties in a satisfactory manner.

38. Plaintiff was qualified for the position of dual-rate floorperson, as well as the individual positions of floorperson and dealer.

39. In or about October, 2009, Plaintiff was diagnosed with a serious physical or mental impairment that substantially interfered with one or more major life activities ("Disability").

40. As a result of his Disability, Plaintiff underwent surgery in January, 2010.

41. Following his surgery, Plaintiff took an approved medical leave of absence, pursuant to the Family Medical Leave Act, and returned to work in June, 2010.

42. At all times, Plaintiff was physically able to perform the essential functions of my position with reasonable accommodations, including a medical leave of absence pursuant to the Family Medical Leave Act between January and June, 2010.

43. Upon his return to work in June, 2010, Plaintiff requested as a reasonable accommodation that he be allowed to carry a bottle of water and chew gum while working.

44. Initially, Trump Defendants granted this accommodation and, while working, Plaintiff would discreetly either chew gum or take occasional sips of

water.

45. In or about February, 2011, it was announced that the Landry's Defendants had entered into a purchase agreement with the Trump Defendants for the purchase of the Marina.

46. After the announcement of the sale, the Landry's Defendants were substantially involved in the operations of the Marina, leading up to the official takeover of the property on or about May 25, 2011.

47. In or about February or March, 2011, after the announcement of the sale, Plaintiff was told that he could no longer utilize this accommodation. At one point, Plaintiff's supervisor even threatened to "write up" Plaintiff if he saw Plaintiff chewing gum or drinking water while working.

48. Plaintiff spoke to Ms. Lew, and asked to be allowed to continue his accommodation. Ms. Lew denied his request, telling him to just "suck on candy," which would not have accommodated Plaintiff's Disability.

49. In or about mid-March, 2011, Plaintiff gave a note from his doctor to the Human Resources department at the Marina, stating the medical need for the requested accommodation.

50. On or about March 20, 2011, Plaintiff received a letter formally denying his request.

51. Plaintiff called Barbara Hultsizer, Human Resources, to discuss the denial, but Ms. Hultsizer did not return his calls.

52. During one call, Plaintiff told Ms. Hultsizer's assistant that his request fell under the Americans With Disabilities Act, and he was going to

contact the federal government about the denial.

53. Plaintiff then contacted the Equal Employment Opportunity Commission.

54. Less than two months later, on or about May 18, 2011, Plaintiff was told that his employment was ending, and he had not been selected to continue working once the Landry's Defendants officially assumed control of the Marina on May 25, 2011.

55. Plaintiff was not given any reason for his termination/non-selection, other than words to the effect that "they didn't want" him and he "didn't make the cut."

56. As of May 18, 2011, Plaintiff was approximately fifty-eight and a half (58.5) years old.

57. Subsequent to Plaintiff's termination/non-selection, Defendants allowed significantly younger individuals to continue working as dealers, dual-rate floorpersons, and floorpersons.

58. Subsequent to Plaintiff's termination/non-selection, Defendants allowed individuals without a Disability and/or individuals who had not requested reasonable accommodations to continue working as dealers, dual-rate floorpersons, and floorpersons.

59. Subsequent to Plaintiff's termination/non-selection, Defendants allowed individuals who had not complained of discrimination to continue working as dealers, dual-rate floorpersons, and floorpersons.

60. The majority of individuals employed at the Marina as dealers on

May 18, 2011, were selected to continue working at the Marina (renamed as the Golden Nugget) on and after May 25, 2011.

61. The majority of individuals employed at the Marina as dual-rate floorpersons on May 18, 2011, were selected to continue working at the Marina (renamed as the Golden Nugget) on and after May 25, 2011.

62. The majority of individuals employed at the Marina as floorpersons on May 18, 2011, were selected to continue working at the Marina (renamed as the Golden Nugget) on and after May 25, 2011.

63. Plaintiff's Disability and request for a reasonable accommodation was a motivating and determinative factor in connection with the decision to terminate his employment/failure to select him to continue working at the Marina.

64. Plaintiff's age was a motivating and determinative factor in connection with the decision to terminate his employment/failure to select him to continue working at the Marina.

65. Plaintiff's complaint of discrimination was a motivating and determinative factor in connection with the decision to terminate his employment/failure to select him to continue working at the Marina.

66. As a direct result of the discriminatory conduct, Plaintiff has in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering and other injuries, the full extent of which is not known at this time.

## COUNT I
## (ADA)

67. Plaintiff incorporates herein by reference paragraphs 1 through 66 above, as if set forth herein in their entirety.

68. The Defendants, by the discriminatory acts set forth herein, violated the ADA.

69. The conduct set forth herein warrants the imposition of punitive damages.

70. As a direct and proximate result of the foregoing violations of the ADA, Plaintiff has sustained the injuries, damages and losses set forth herein.

## COUNT II
## (ADEA)

71. Plaintiff incorporates herein by reference paragraphs 1 through 70 above, as if set forth herein in their entirety.

72. Defendants, by the discriminatory acts set forth herein, violated the ADEA.

73. As a direct and proximate result of the foregoing violations of the ADEA, Plaintiff has sustained the injuries, damages and losses set forth herein.

74. Defendants acted willfully, warranting the imposition of liquidated damages.

75. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of these discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

## COUNT III
## (NJLAD)

76. Plaintiff incorporates herein by reference paragraphs 1 through 75 above, as if set forth herein in their entirety.

77. Defendants, by the discriminatory acts set forth herein, violated the NJLAD.

78. Defendants were aiders and abettors of the discrimination and retaliation described herein.

79. As a direct and proximate result of the foregoing violations of the NJLAD, Plaintiff has sustained the injuries, damages and losses set forth herein.

80. Members of upper management of Defendants had actual participation in, or willful indifference to, the wrongful conduct described herein.

81. The wrongful actions were especially egregious, warranting the imposition of punitive damages.

82. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of these discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Michael Jackson, and against Defendants:

    a.    declaring the acts and practices complained of herein to be a violation of the ADA;

    b.    declaring the acts and practices complained of herein to be a violation of the ADEA;

    c.    declaring the acts and practices complained of herein to be a violation of the NJLAD;

    d.    enjoining and restraining permanently the violations alleged herein;

    e.    awarding compensatory damages to Plaintiff to make him whole for all past and future lost earnings, benefits and earnings capacity which he has suffered and will continue to suffer as a result of the foregoing discriminatory and unlawful conduct;

    f.    awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

    g.    awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

    h.    awarding Plaintiff liquidated damages pursuant to the ADEA;

    i.    awarding Plaintiff punitive damages pursuant to the ADA;

    j.    awarding Plaintiff punitive damages pursuant to the NJLAD;

    k.    awarding Plaintiff such other damages as are appropriate under the ADA, ADEA, and NJLAD; and

    l.    granting such other and further relief as this Court deems appropriate.

CONSOLE LAW OFFICES LLC

Dated: March 15, 2013    BY:    _/s/ James M. Duttera_
James M. Duttera
(215) 545-7676

Attorney for Plaintiff,
Michael Jackson