## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

MICHAEL JACKSON,                         :

           Plaintiffs,                     :       Hon. Joseph H. Rodriguez

       v.                                 :
                               Civil Action No.  13-1605
TRUMP ENTERTAINMENT RESORTS, :
INC.; TRUMP ENTERTAINMENT
RESORTS HOLDINGS, LP; TRUMP   :
MARINA ASSOCIATES, LP;
LANDRY'S RESTAURANTS, INC.;   :       OPINION
LANDRY'S GAMING, INC.; and
LANDRY'S A/C GAMING, INC.     :

           Defendants.                    :

---

       This is an employment discrimination suit filed by Michael Jackson ("Plaintiff" or "Jackson"), against Landry's Inc. ("Defendant" or "Landry's"), formerly known as Landry's Restaurants, Inc.  Jackson alleges that he was discriminated against because of his disability and age in violation of the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA") and was terminated in retaliation for his complaints of disability discrimination in violation of the New Jersey Law Against Discrimination ("NJ LAD"). Landry's moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court heard oral argument on November 5, 2015. For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted in part and denied in part.

## I.  Background

       On May 28, 1985, Plaintiff Michael Jackson ("Jackson") was hired by Trump Castle (succeeded later by Trump Marina) as a casino dealer. Compl. ¶ 33.  After ten years,

Trump Marina promoted Jackson to the position of "dual-rate floorperson" requiring Jackson to work some shifts as a dealer and some as a floorperson supervising dealers. Id. ¶ 34-35.

Over the course of twenty-five years through the end of 2010, Jackson received six written notifications for violating company policies. Among these written warnings are violations for 1) failing to use the elevator, entrance, or exit designated for employees (2010); 2) performing job duties carelessly (2009); 3) failing to maintain satisfactory interpersonal relations with co-workers (2008); 4) entering an unauthorized area to drink a soda (2006); 5) misconduct toward a customer (1992); and 6) poor job performance (1991). See Def.'s Stmt. Facts ¶ 3, Exs. D, E, F, G, H, I.  Despite these warnings, each of Jackson's performance evaluations for the last five years of his employment (2007-2011) indicated he "performs at a satisfactory level and is considered a standard or consistent employee." Pl.'s Resp. Def.'s Stmt. Facts 5, Exs. E, F; Def.'s Stmt. Facts ¶ 5, Exs. J, K, L.

Around October 2009, Jackson was diagnosed with cancer of the face and neck and underwent surgery in January 2010. Compl. ¶ 39-40. Jackson took a medical leave of absence and returned to work on or around July 1, 2010 but suffered from dryness of mouth arising from his radiation treatments. See id. ¶ 41; see also Def.'s Stmt. Facts ¶ 12.

Jackson alleges that upon his return to work he requested and was granted reasonable accommodations to carry a bottle of water and chew gum while working. Compl. ¶ 43-44. However, Defendant claims that no reasonable accommodations were granted but rather, Jackson was advised to contact Human Resources ("HR") immediately upon learning that he was violating company policy by having bottled water and chewing gum. See Wilson Dep., 20:5-20:11.

In March 2011, Jackson formally requested reasonable accommodations with HR and was denied accommodations. Compl. ¶ 49-50. Plaintiff alleges that he contacted the Equal Employment Opportunity Commission ("EEOC") around March 18, 2011, to initiate the charge-filing process. Id. ¶ 29. However, the earliest EEOC filing on record indicates that the charges were made on December 8, 2011. Compl. Ex. A.

Around February 14, 2011, Landry's announced that it would be purchasing the Trump Marina Casino. See Compl. ¶ 45; see also Pohlman Dep., 9:24-10:3. Pursuant to the asset purchase agreement, Landry's was obligated to retain eighty-five percent (85%) of Trump Marina's employees. Def.'s Stmt. Facts ¶ 29. Accordingly, on or about March 21, 2011, Trump Marina issued notices to all employees that their employment would be terminated on May 25, 2011. Id. ¶ 24.

Karen Lew ("Lew"), Casino Manager, and Donald Browne ("Browne"), Senior Vice President of Casino Operations, were responsible for making decisions regarding retention of employees in the Games Department of the casino and selected employees to be recommended to Landry's for employment offers. Def.'s Stmt. Facts ¶ 30.  Lew and Browne did not select Jackson for recommendation to Landry's, and thus, Jackson's employment officially terminated on May 25, 2011. Compl. ¶ 54; Def.'s Stmt. Facts ¶ 45.

Jackson brings claims under the ADA, the ADEA, and the NJ LAD alleging that Landry's discriminated against him based on his disability, age, and in retaliation of his filing a complaint with the EEOC. Compl. ¶ 2.

## II.  Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving

party, the moving party is entitled to judgment as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

4

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

In an employment discrimination case, the burden of persuasion on summary judgment remains unalterably with the employer as movant. The employer must persuade the court that even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor. <u>Doe v. C.A.R.S.</u>, 527 F.3d 358, 362 (3d Cir. 2008).

## III. Analysis

Defendant Landry's moves for summary judgment on the basis that no reasonable factfinder could conclude, on this record, that Plaintiff can establish a *prima facie* case for any of his alleged claims of discrimination – disability discrimination, age discrimination, and retaliation. Furthermore, Defendant moves for summary judgment asserting that, even if Plaintiff can make out a *prima facie* case of discrimination, no reasonable factfinder could conclude, on this record, that Plaintiff will be able to show that Landry's' proffered nondiscriminatory reason for not hiring Plaintiff is a pretext for discrimination. As set forth below, viewing the facts in the light most favorable to

Plaintiff, the Court disagrees with Landry's as to Plaintiff's claims or retaliation and disability discrimination; Landry's Motion for Summary Judgment is denied with respect to those claims.  Summary judgment is granted as to Jackson's age discrimination claim.

In this case the parties offer somewhat conflicting views on the framework of the analysis of the cause of action.  Because Landry's was obligated to retain 85% of the work force, pursuant to the asset purchase agreement governing the sale of the casino, Plaintiff argues that the relaxed standard applied in reduction of force (RIF) cases may govern his claims. See Pivirotto v. Innovation Systems, 191 F.3d 344, 357 (3d Cir. 1999) (noting relaxation of the fourth element of a prima facie case when there is a reduction in force).  Under this theory, even though Landry's terminated the entire work force and then selectively rehired the required 85%, the end result is essentially a reduction in force, as opposed to either a termination and/or a failure to hire.  Although termination and failure to hire seem to apply with equal force. During oral argument, the parties agreed that the circumstances were unique and were unable to supply any authority on the framework under which the claims must be construed.

Recognizing the dearth of case law and the unique circumstances of this case, the difference between the two frameworks must be explored. To resolve claims of employment discrimination, the Third Circuit utilizes the analytical framework pronounced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). See Olson v. General Electric Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). "[D]iscrimination claims resulting from a RIF differ from a decision to fire an employee[.]" Tomasso v. Boeing Co., 445 F.3d 702, 711-12 (3d Cir. 2006) (citations omitted). Pursuant to McDonnell Douglas, the plaintiff bears the initial burden of establishing a *prima facie*

6

case of unlawful discrimination. "The fourth element of a prima facie case is intended to be flexible and must be relaxed in certain situations, as when there is a reduction in force." Pivirotto, 191 F.3d at 357 (internal quotation omitted).  In a RIF case "subjective criteria take on a greater significance as the employer looks to draw finer distinctions between employees. Thus, subjective categories such as "attitude" and "teamwork" need to be viewed not just in light of the warning against such criteria articulated in Goosby, 228 F.3d at 313, but also in light of the fact that employers must distinguish otherwise competent employees." Id.

The Court will analyze the claims as a termination/ failure to hire with consideration of the subjective criteria permissible in a RIF.

### A. Disability Discrimination and Retaliation

The first Count of Plaintiff's Complaint alleges that Landry's discriminated against Jackson based on his disability in violation of the ADA.  The ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability. 42 U.S.C. § 12112(a). Under McDonnell Douglas, an employee must first establish by a preponderance of the evidence a prima facie claim of discrimination by showing (1) the plaintiff is a member of a protected class; (2) he or she was qualified for the position sought; (3) he or she was subject to an adverse employment action despite being qualified; and (4) the employer treated more favorably those not in the protected class or, under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position. Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir.2003)

(citations omitted). The prima facie test is a flexible one which must be tailored to fit the specific context in which it is applied. Id. at 797–98.

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. McDonnell Douglas, 411 U.S. at 802. The employer may satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). However, "[a]n employer cannot successfully defend a hiring decision against a Title VII challenge merely by asserting that the responsible hiring official selected the man or woman who was 'the right person for the job.' " Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir. 1999).

Once the employer meets this "relatively light burden," "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." Fuentes, 32 F.3d at 763. A plaintiff may establish pretext directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered reason is unworthy of credence. Ezold, 983 F.2d at 523. One of these is sufficient; the employee does not have to prove both that the explanation is implausible and that discrimination was a motivating factor. Waldron v. SL Indus., Inc., 56 F.3d 491, 494–95 (3d Cir. 1995). On the other hand, the employee cannot carry his burden by showing that the employer's decision was "wrong or mistaken." Fuentes, 32 F.3d at 765. Rather, he must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence," id. (citing Ezold, 983 F.2d at 531), "and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons,' " id. (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)).

A plaintiff's subjective belief that his qualifications should have been accorded more weight is not probative of pretext. See, e.g., Valdes v. Union City Bd. Of Ed., 186 Fed. Appx. 319, 323 (3d Cir. 2006). An employer is entitled to evaluate which qualifications best fit its needs in selecting a candidate. See Sarmiento v. Montclair State Univ., 513 F.Supp.2d 72, 89 (D.N.J .2007) (finding legitimate reasons for not selecting the more experienced candidate because it was up to the university to evaluate which qualifications best fit departmental needs). That is, a plaintiff's disagreement with assessment criteria and belief that he or she is better qualified for the position is not sufficient to avoid summary judgment. Langley v. Merck & Co., 186 Fed. Appx. 258, 261 (3d Cir. 2006).

The third Count of the Complaint alleges that, by not offering to continue his employment, Landry's effectively terminated Jackson

 in retaliation for objections he raised after the HR department denied his request for reasonable accommodations. This alleged retaliatory behavior is a violation of the NJ LAD. Retaliation claims raised under the NJ LAD are analyzed under the same McDonnell Douglas burden-shifting framework utilized in the discrimination context. Here, Jackson claims that Landry's supervisors retaliated against him on the basis of internal complaints to supervisors and to HR.

In order to successfully assert a retaliation claim, the plaintiff must demonstrate that he: (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) that there is a causal connection between his participation in the protected activity and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006). Here Defendant only disputes whether Plaintiff can produce evidence of a causal connection between his internal complaints alleging disability discrimination and his termination.  A causal connection may be established by circumstantial evidence, such as temporal proximity, a pattern of antagonism, and pretext. Kachmar v. SunGard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997).

In Kachmar, the Third Circuit explained that proof of a causal connection between a protected activity and an adverse employment action involves a highly specific inquiry into the motives of an employer and may be established in a number of ways. 109 F.3d at 177. Causation may depend on the temporal proximity between the employee's protected activity and the adverse employment action. Id. Temporal proximity can serve as circumstantial evidence "sufficient to raise the inference that [the plaintiff's] protected activity was the likely reason for the adverse action." Id. (quoting Zanders v. Nat'l R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir. 1990)).  Absent temporal proximity, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." Kachmar, 109 F.3d at 177.  Temporal proximity and a pattern of antagonism, however, "are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." Id.

Here an inference of discrimination exists and there is evidence in the record from which a jury could determine that discrimination influenced the decision to terminate Plaintiff.

The record shows that Jackson formally requested and reasonable accommodations for his dry mouth on March 7, 2011 and was denied on March 17, 2011. SOF, ¶¶16-17.  Although the decision to sell, and therefore be bound by the RIF in the asset purchase agreement, occurred around February 14, 2011, Landry's announced that it would be purchasing the Trump Marina Casino and, on March 21, 2011, Trump Marina issued notices to all employees that their employment would be terminated on May 25, 2011. See Compl. ¶¶ 24, 45; see also Pohlman Dep., 9:24-10:3. Ultimately, Plaintiff was terminated/ not rehired on May 25, 2011.  Thus, there are several dates to consider in regards to the temporal proximity of his termination to his request/denial for accommodations.

Plaintiff's termination coming only a few weeks following his request for an accommodation makes causation plausible, especially in light of lack of evidence regarding Plaintiff's alleged recent behavior problems. The record does not reflect a "constant barrage of written and verbal warnings" after 2007. While there is ample evidence that many employees subjectively felt that Jackson was a problem, he was not written up and he continued to be evaluated positively on his performance reviews. Given the timing of Jackson's termination relative to his request for an ultimately unapproved accommodation, the temporal proximity between the protected activity and the adverse action is "unusually suggestive" and is sufficient standing alone to create an inference of causality and defeat summary judgment. See Clark County School Dist. v.

Breeden, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (temporal proximity alone, when "very close," can in some instances establish a prima facie case of retaliation); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (reversing summary judgment in favor of the defendant where plaintiff had been discharged two days after his employer's receipt of his EEOC claim). LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007). In addition, the Court notes the criteria used to evaluate "re-hire" was subjective and Browne and Lew gave different criteria to be considered. Browne testified that agreeableness, teamwork, and adaptability to change were the only criteria Browne Dep. at 10:23-11:11. Ms. Lew claimed performance, employee related skills, paperwork, and capabilities were the criteria. Lew Dep. at 59:1-6, 59:19 to 60:3.

Landry's rebuts the *prima facie* case with evidence that Jackson was a difficult employee.  However, given the timing of his request for an accommodation and the fact that he was not written up for many of the alleged "difficulties" put forth by Landry's, there is evidence in the record from which a jury could determine that, in Jackson's case, discrimination was at play. For these reasons, the temporal proximity, the circumstances, and the inconsistencies in the reasons that Browne and Lew gave for Jackson's termination may suggest retaliatory animus and summary judgment is denied.

For the same reasons, summary judgment is denied as to Jackson's disability discrimination claim; Count I in the Complaint.  There is ample evidence and data in the record to demonstrate that Landry's rehired everyone with an approved disability accommodation.  However, this evidence may be construed to suggest the inverse

conclusion; that because Jackson's accommodation request was not approved, he was not rehired on the basis of his disability. While the Court recognizes that this claim is thin, summary judgment is denied for the same reasons set forth in the retaliation claim.

### B.  Age Discrimination

Plaintiff also alleges he was terminated because of his age. In order to establish a prima facie case of discrimination under the ADEA, a plaintiff must prove that: (1) the plaintiff belongs to a protected class-over age 40; (2) the plaintiff was qualified for the position in question; (3) the plaintiff suffered an adverse employment decision; and (4) the position was filled by someone sufficiently younger to permit an inference of age discrimination. See Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 331 (3d Cir. 2000); Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995). In an age discrimination case where the plaintiff is terminated as a result of a RIF, the plaintiff must show "that the employer retained a sufficiently younger similarly situated employee." Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 301 (3d Cir. 2004); Anderson v. Consol. Rail Corp., 297 F.3d 242, 250 (3d Cir. 2002).  An employee is "similarly situated" when the evidence supports a claim that the plaintiff and a retained employee shared comparable duties. Id. "This determination requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner." Monaco, 359 F.3d at 305; see also Opsatnik v. Norfolk S. Corp., 335 Fed. Appx. 220, 222–23 (3d Cir. 2009) ("While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.' ") (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)); Lepore v. Lanvision Sys., Inc., 113 Fed. Appx. 449, 452 (3d Cir. 2004) (opining that similarly situated employees "work in the same area in

approximately the same position") (citing Anderson, 297 F.3d at 249–50); Johnson v. Kroger Co., 319 F.3d 858, 867 (6th Cir. 2003) ("In the context of personnel actions, the relevant factors for determining whether employees are similarly situated often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct.") (citation omitted); Milliron v. Pilot Travel Cntrs., LLC, No. 06–0262, 2009 WL 2579200, at *10 (W.D.Pa. Aug. 20, 2009) (citing Monaco and collecting other Circuit cases); Armstead v. Norfolk S. Corp., 2006 WL 544403, at *5 (W.D.Pa. Mar. 3, 2006) (holding that a supervisor was not similarly situated to another supervisor with the same title where the former could not perform the latter's duties).

Defendant challenges Plaintiff's ability to satisfy the fourth prong of the *prima facie* case and, if Plaintiff can establish a prima facie case, that Landry's proffered reason is not a pretext for discrimination.  The Court finds that the Plaintiff has not put forth sufficient evidence to establish a *prima facie* case of age discrimination claim and summary judgment is granted.[1]

Plaintiff argues that his comparators are comprised of only the Dual Rate Supervisors in the gaming department, as opposed to comparing him to the entire gaming department which includes the dual rate supervisors, the dealers, and the supervisors.  Landry's put forth evidence tending to show that after the rehiring, the average age of the entire gaming department increased by almost three years.  Plaintiff argues that his true comparators are only the dual rate supervisors and that evidence shows that the average age of the dual rate supervisors decreased by only .98 percent.

---

[1] In so finding the Court need not reach Landry's argument that the claim is not properly before the Court for failure to exhaust administrative remedies.

Plaintiff is 58.  Plaintiff contends that a different view of the demographic evidence of the retained dual rate supervisor shows a correlation between age and retention. Specifically, the Duttera Affidavit can be read to show that forty percent (40%; 2 of 5) of employees in their sixties were retained, over twenty five percent (25.9%; 7 of 27) and less than four percent of the forty year old (3.9%; 1 of 27) were terminated.   No one in their thirties was terminated.  See, generally¸ Duttera Aff.

Plaintiff's appropriate comparators in this case are the smaller subset of the gaming department; those employees in the role of dual rate supervisor.  Lepore, 113 Fed. Appx. at 452 (opining that similarly situated employees "work in the same area in approximately the same position[.]") A dual rate supervisor performs both the dealer job and the supervisor job.  So, in some respects the information with respect to those classes of employees in the dealer or supervisor role is relevant to the inquiry, but not determinative.  The gaming department is larger and therefore the average age of the department's employees is less impacted by the "RIF."  While these employees separately perform the same job as the dual rate supervisor, they are not charged with the overriding responsibility inherent in both job classifications.  In other words, the dual rate supervisor is a unique classification and therefore Plaintiff should be compared to that group of employees.

Under the evidence presented, Plaintiff cannot establish a *prima facie* case of age discrimination.  While Plaintiff's attack of Landry's data presents a different theory, it is at most speculation and conjecture.  Looking at the group of retained employees in the Dual Rate Supervisor Role, there is not a sufficient difference in the average age to suggest that Plaintiff's age was a motivating factor in his termination.

"In order for a plaintiff to satisfy the 'sufficiently younger' standard, … there is no 'particular age difference that must be shown,' but while '[d]ifferent courts have held … that a five year difference can be sufficient, … a one year difference cannot.' " Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999) (quoting Sempier, 45 F.3d at 729 (citations omitted)).  To the extent that one could argue that Plaintiff was "replaced," under the unique facts of this case, the Court finds that Jackson cannot show that he "was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Smith, 589 F.3d at 689 (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004); see also Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001) (fourth element is "his or her replacement was sufficiently younger to permit a reasonable inference of age discrimination."); Showalter, 190 F.3d 231, 234 (3d Cir. 1999) (fourth element is "the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination") (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)).

Comments about Plaintiff's inability to adapt to change and reluctance to accept a new role can be related to age and therefore impermissible discrimination.  However, this record does not support such an inference of age discrimination given the minimal shift in the average age of employees retained in Plaintiff's position.  For these reasons, summary judgment is granted.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted in part as it relates to Plaintiff's age discrimination claim and denied in part as it relates to Plaintiff's disability and retaliation claims.

An appropriate ORDER shall issue.

Dated: December 21, 2015

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE