IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **MICHAEL JACKSON,** | Civil Action |
| Plaintiff, | No. 1:13-cv-1605 |
| vs. | |
| **TRUMP ENTERTAINMENT RESORTS, INC.; TRUMP ENTERTAINMENT RESORTS HOLDINGS, LP; TRUMP MARINA ASSOCIATES, LP; LANDRY'S RESTAURANTS, INC.; LANDRY'S GAMING, INC.; AND LANDRY'S A/C GAMING, INC.** | |
| Defendants. | |

**GOLDEN NUGGET ATLANTIC CITY, LLC'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING PLAINTIFF'S BACK PAY AND FRONT PAY DAMAGES**

**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
**Midtown Building, Suite 400**
**1301 Atlantic Avenue**
**Atlantic City, New Jersey 08401**
**Attorneys for Defendant Landry's, Inc. f/k/a Landry's Restaurants, Inc.**

**Eileen Oakes Muskett, Esquire, Of Counsel**
**Adam Busler, Esquire, On the Brief**

Golden Nugget Atlantic City, LLC ("GNAC") submits this Brief in support its Motion for Judgment as a Matter of Law ("JMOL") to reduce or limit an award of back pay and to disallow any award of front pay and/or future lost earnings.

## APPLICABLE STANDARD

This motion comes before the Court under Federal Rule of Civil Procedure 50(a), Judgment as a Matter of Law in a Jury Trial. Pursuant to Rule 50(a), JMOL must be granted if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The standard for issuing a JMOL is the same as that for granting summary judgment under Rule 56. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001). As such, "[t]he question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." Eshelman v. Agrere Systems, Inc., 554 F.3d 426, 433 (3d Cir. 2009) (citing Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)). It is a narrow inquiry, and "[the Court] must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [its] own version of the facts for that of the jury." Id. (citing Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007)).

## **PRELIMINARY STATEMENT**

Jackson failed to present sufficient evidence warranting back pay through the date of this Court's judgment. Jackson testified that he worked at Trump Marina as a dealer and dual-rate floor person from 1985 to 2011. Following GNAC's decision to not hire Jackson on May 25, 2011, Jackson began working as a games dealer for the Showboat Casino in Atlantic City in July 11, 2011. See 12/6/16 Trial Transcript, 212:23-212:24. Jackson testified that he worked at Showboat until August 30, 2014, at which point the Showboat ceased operations and terminated all of its employees, including Jackson. See 12/6/16 Trial Transcript, 218:8-218:13. Jackson did not obtain any employment with a casino following Showboat, despite nearly thirty years in the casino industry. Instead, Jackson went back to school and became a truck driver. As such, an award of back pay must be cut off at the date Jackson's employment with Showboat ended in September 2014 because GNAC cannot be liable for Showboat's closure and because Jackson failed to diligently pursue for comparable employment in the casino industry. In the alternative, Jackson's back pay award must be reduced for all interim earnings, including worker's compensation, and for the periods Jackson removed himself from the marketplace.

Jackson has similarly failed to demonstrate that he is entitled to front pay or future lost wages. To start, Jackson sought an award of "future lost earnings" in his Complaint, not "front pay," which is an equitable remedy when reinstatement is not

feasible. Because Jackson failed to request reinstatement as a remedy, he is not entitled to pursue an award of front pay. See Valenti v. International Mill Service, Inc., 1987 WL 54444 at *7 (3d Cir. Dec. 29, 1987). Jackson has also failed to provide any evidence of what he would have earned if GNAC hired him or how long he would have continued to receive those earnings. Even if GNAC had hired Jackson, his inability to work cordially with management further suggests it was not probable that he would have remained employed with GNAC up to the time of trial, which means that a front pay award pay would place him in a better position than he would have been absent the alleged discrimination. Moreover, because Jackson has offered no testimony that he suffered any reputational harm, he is not eligible for future lost earnings.

## **LEGAL ARGUMENT**

**I.     GNAC IS ENTITLED TO A DIRECTED VERDICT REQUIRING A REDUCTION OF ANY AWARD OF BACK PAY.**

Back pay is intended to make an individual "whole by restoring them to the position they would have been absent the discrimination." Donlin v. Philips Lighting North America Corp., 581 F.3d 73, 84 (3d Cir. 2009) (citation omitted). It is an equitable remedy within the discretion of the court, and it is neither automatic nor mandatory. Id. citing Albemarle Paper Co. v. Moody, 422 U.S. 405, 414 (1975). The jury merely serves an advisory role, and the question of whether to award back

pay is one for the court. Id. at n. 1 (citing Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 849-850 (2001)); McKenna v. City of Philadelphia, 636 F. Supp. 2d 446, 450 (E.D. Pa. 2009) (refusing to submit the plaintiff's equitable claims for front or back pay to the jury).

As a threshold matter, Jackson's claims that he is entitled to approximately $48,000 per year in back pay based on what he earned in his final year as a dual-rate supervisor with Trump Marina. This number is inaccurate and an unreliable metric for determining what Jackson would have earned if he was offered a position with GNAC. As a dual-rate supervisor, Jackson spent part of his time as a dealer and part of his time as a supervisor. However, Jackson offered no testimony regarding how his time was allocated between these two functions, which would affect how much money he would make in a given year. Jackson failed to offer any evidence to prove by a preponderance of the evidence that he would have continued to earn this amount if GNAC offered him a position. Moreover, Jackson failed to provide any testimony or evidence regarding what the "toke" rates were for the GNAC dealers from 2011 through 2016, which would also impact the amount of money Jackson could have earned. See Trial Trans., 411:11-411:25. Therefore, the Court cannot simply extrapolate Jackson's projected 2011 income with Trump Marina to prove what he could have earned with GNAC.

In addition to the specious numbers presented by Jackson at trial, GNAC cannot be liable for the closing of the Showboat or the market conditions of the Atlantic City casino industry. Following the closing of Showboat Casino, and despite nearly thirty years in the casino industry, Jackson abandoned the casino industry to go to truck driving school. He failed to continue mitigating his damages by applying for comparable positions, and as such, any back pay award should be cut off at the time Jackson ceased working at Showboat Casino. Alternatively, if this Court awards Jackson back pay through the date of judgment, it must be reduced for the periods in which Jackson removed himself from the market. Jackson was removed from the market place on several occasions, including the periods of time when he was medically unable to work due to workplace injuries and the period of time when he was attending school. This Court's award of back pay must be reduced to exclude any time where Jackson was removed from the market place. Additionally, Jackson has held several positions since his last day of employment at Trump Marina. Therefore, a back pay award must also be reduced by any interim earnings Jackson obtained from alternative employment.

### A. An Award of Back Pay Must Be Cut Off at the Time Jackson Stopped Seeking Comparable Employment.

To recover back pay, a plaintiff must mitigate his damages. Ford Motor Co. v. EEOC, 458 U.S. 219, 231 (1982). Although he "need not go into another line of work, accept a demotion, or take a demeaning position," he must use reasonable diligence to find a substantially equivalent position. Id. at 232. If the plaintiff fails to exercise reasonable diligence, his back pay award must be cut off prior to the date of judgment. Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1005 (3d Cir. 1988) (comparing the mitigating effect of starting one's own business versus going to school for future pecuniary gain).

Additionally, the duty "to mitigate is *not* met by using reasonable diligence to obtain *any* employment. Rather, the [plaintiff] must use reasonable diligence to obtain *substantially equivalent* employment." Booker v. Taylor Milk Co, Inc., 64 F.3d 860, 866 (3d Cir. 1995). Substantially equivalent employment is that "which affords virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the [plaintiff] has been discriminatorily" refused. Id.

Here, Jackson admitted that he did not obtain a position in the casino industry following the Showboat closing and instead chose to attend truck driving school. Jackson abandoned his search for comparable employment in 2014 when the

Showboat Casino closed and instead chose to abandon his thirty-year career in the casino industry and pursue work as a truck driver. There is no evidence that he continued to seek a substantially equivalent position in the gaming industry after his employment with Showboat Casino ended.

**(B)  Jackson's Back Pay Must Be Reduced for the Periods of Time Jackson When Was Removed from the Market Place**

Jackson's back pay award should be reduced for the periods of time he was removed from the market place. Since his employment at Trump Marina ended, Jackson has been medically unable to work on two separate occasions. Additionally, Jackson spent twelve-weeks in truck driving school.  12/7/16 Trial Transcript, 412:12-412:16.  During these periods, Jackson was unavailable to accept a comparable role, and this should be reflected in a reduction of his award of back pay.

(i)  *Reduction for Periods of Disability*

A disability can render an employee unable to obtain comparable employment, so "as a general rule, [an employment discrimination plaintiff] will not be allowed back pay during any periods of disability." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1101 (3d Cir. 1995) (quotations and citations omitted); see also Mason v. Association for Independent Growth, 817 F. Supp. 550, 554 (E.D. Pa. 1993) ("Further, as a general rule, a claimant will not be allowed back pay during periods of disability."); Taylor v. Cent. Pennsylvania Drug & Alcohol Servs. Corp.,

8

890 F. Supp. 360, 370 (M.D. Pa. 1995) (in the context of a Title VII claim, the court concluded that periods during which the plaintiff "would not have worked due to health condition, conflicting obligations, or for other reasons are excluded from calculation of back pay."). Additionally, "an employer who has discriminated need not reimburse the plaintiff for salary loss attributable to the plaintiff and unrelated to the employment discrimination." Starceski, 54 F.3d at 1101.

Here, the evidence shows that Jackson injured his back in June 2015 while working for Spinelli Trucking and, as a result of this injury, was unable to work for approximately six months and filed a worker's compensation claim. Moreover, in January 2016, Jackson injured his knee while working as a truck driver for Ivy Acres, which caused him to file another worker's compensation claim and miss work for four months. Therefore, there was an approximately ten-month time period for which Jackson was unable to work and therefore cannot recover any back pay.

    (ii)    *Reduction for Period of Schooling/Training*

Additionally, employees who remove themselves from the job market to commence education or training may not be eligible for back pay for that time period. Bowyer v. Dish Network LLC, No. 08-1496, 2010 WL 1610112, *7 (W.D.Pa. April 20, 2010) (citing Taylor v. Safeway Stores, Inc., 524 F.2d 263, 268 (10th Cir. 1975), overruled on other grounds by Ruckelshaus v. Sierra Club, 463

9

U.S. 680 (1983)).  To mitigate his damages while in school, the plaintiff must remain ready, willing, and available to enter the workforce. Keller v. Connaught Inc., No. Civ. A. 96-177, 1997 WL 5625, *3 (E.D. Pa. Feb. 10, 1997).

The court recognizes that in some instances, continued education in the same field may be the only path to find suitable, comparable employment. However, if a "plaintiff obtains schooling that will likely lead to employment in a non-comparable field, then the plaintiff's monetary expectations are directed only toward the future, [and] back pay cannot legitimately be claimed since no present compensation can be expected." Id. at *4 (citing Carden, 850 F.2d at 1005 and n. 9 (internal quotations omitted)).

Here, Jackson has testified that he was out of work because he attended truck driving school following his termination from Showboat.  For approximately three months following the closing of Showboat Casino, Jackson was in trucking school to become a certified truck driver.  12/7/16 Trial Transcript, 412:12-412:16.  During this time, he removed himself from the market place, and he was unavailable for work. See Taylor, 890 F. Supp. at 370 (the period of time where plaintiff would not have worked due to conflicting obligations was not included in back pay calculation). There is also no evidence that he continued to seek comparable employment while in school.  Jackson was therefore not available to assume a

comparable role, and he was in school for training to enter a new field. As such, he should be unable to recover back pay for the period of time he was enrolled in trucking school.

### (C) All Interim Earnings Must Be Reduced from Any Award of Back Pay

Under both federal law and the New Jersey Law Against Discrimination, an award of back pay should be reduced by any interim earnings of Jackson. See Gimello v. Agency Rent-A-Car Systems, Inc., 250 N.J. Super. 338, 367 (App. Div. 1991) ("Ordinarily back pay accrues from the date of discharge to the date of decision and is reduced by interim earnings.")); Ellis v. Ethicon, Inc., No. 05-726; 2009 WL 10641983, *18 (D.N.J. November 13, 2009) (subtracting the plaintiff's post-discrimination earnings from the award of back pay against her former employer); McKenna v City of Philadelphia, 636 F. Supp. 2d 446, 457 (E.D.Pa. 2009) (reducing an award of back pay by the Workers' Compensation benefits plaintiff received); Cole v. Uni-Marts, Inc., 88 F. Supp. 2d 67, 76 (W.D.N.Y. 2000) (noting that in an ADA claim, "the employer's liability for back pay may be reduced by the amount of the plaintiff's interim earnings from other employment").

Here, Jackson testified that after May 2011, he made from Showboat $8,703 in 2011, $19,012 in 2012, $21,128 in 2013, and $17,505 in 2014. Trans., 352:19-353:3. He also made $15,899 in 2015 and $17,890 in 2016 while working as a truck

driver. 12/6/16 Trial Trans., 354:10-354:2. These amounts total $100,137 that must be deducted from any award of back pay. Moreover, Jackson also filed two Worker's Compensation claims since 2015 and the monies he received from those claims must also be reduced from any back pay award.

## II.    JACKSON IS NOT ENTITLED TO FRONT PAY OR FUTURE LOST EARNINGS.

Through his Complaint, Jackson seeks an award of "future lost earnings," as opposed to an award of "front pay." See Compl., Prayer for Relief, at (e). In the JFPTO, however, Jackson seeks "front pay." See JFPTO (ECF No. 86), p. 35. Jackson has failed to recognize that there is a distinction between these two forms of relief. See e.g Williams v. Pharmacia, Inc., 137 F.3d 944, 953-53 (7th Cir. 1998) ("[a] lost future earnings award . . . compensates [plaintiff] for a lifetime of diminished earnings resulted from the reputational harm" while "[a] front pay award approximate[s]the benefit [plaintiff] would have received had she been able to return to her old job"); see also Quinlan v. Curtiss-Wright Corp., 425 N.J. Super. 335, 350 (App. Div. 2012) (adopting the holding of Williams). Back pay coupled with the remedy of reinstatement is the preferred remedy to avoid damages in the form of future wages. Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 831 (3d Cir. 1994). The remedy of reinstatement is an equitable one that lies solely within the discretion of the trial court. Maxfield v. Sinclair Int'l, 766 F.2d 788, 796 (3d Cir. 1985), cert. denied 474 U.S. 1057 (1986).

Because there are circumstances where reinstatement is not feasible or appropriate, front pay is an alternative equitable remedy. <u>Feldman</u>, 43 F.3d at 831-832. In such cases, the Court must first determine whether the plaintiff is entitled to reinstatement or front pay in lieu of reinstatement. <u>See</u> <u>Newhouse v. McCormick & Co.</u>, 110 F.3d 635, 642 (8th Cir. 1997) (citing <u>Maxfield</u>, 766 F.2d at 796). Nevertheless, the equitable remedy of reinstatement is not available unless the plaintiff requests it. <u>Wehr v. Boroughs Corporation</u>, 619 F.2d 276 (3d Cir. 1980) (refusing to address a request for front pay when the plaintiff disclaimed the desire to be reinstated). A plaintiff must request the remedy of reinstatement in order to have the option to pursue a front pay award. <u>Valenti</u>, 1987 WL 54444 at *7.

As a threshold issue, Jackson cannot recover front pay because Jackson has failed to plead that relief in his Complaint. <u>See</u> Compl.; <u>see also</u> FED. R. CIV. P. 8(a). If Jackson's failure to demand front pay is not fatal to his request, however, Jackson should still be precluded from seeking such relief because he is legally not entitled to it. Front pay projects and measures the ongoing economic harm that may be experienced by a plaintiff after the final day of trial. <u>Strenkoski v. Apex Chemical Inc.</u>, No. 2:13-CV-2201, 2014 WL 2573266, at *1 (D.N.J. June 9, 2014) (citing <u>Quinlan</u>, 425 N.J. Super. at 350). Moreover, it should only be awarded for a period of time sufficient to allow a plaintiff to reestablish his rightful place in the job

13

market.  Feldman, 43 F.3d at 840 (citing Goss v. Exxon Office Sys. Co., 747 F.2d 885, 890 (3d Cir. 1984)).

Because Jackson did not seek reinstatement as a remedy in his Complaint, he is not entitled to recover front pay and/or future lost wages.  See Compl.; see also FED. R. CIV. P. 8(a).  Back pay coupled with the remedy of reinstatement, however, is the preferred remedy to avoid damages in the form of future wages.  Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 831 (3d Cir. 1994).  Reinstatement is an equitable remedy that is within the sole discretion of the trial court.  Maxfield v. Sinclair International, 766 F.2d 788, 796 (3d Cir. 19) cert. denied 474 U.S. 1057 (1986). In circumstances where reinstatement is not feasible or appropriate, front pay is the alternative equitable remedy.  Feldman, 43 F.3d at 831-32.  However, unless the plaintiff requests the equitable remedy of reinstatement, it is **not** available.  Wehr v. Boroughs Corporation, 619 F.2d 276 (3d Cir. 1980) (refusing to address a request for front pay when the plaintiff disclaimed the desire to be reinstated). If reinstatement is unavailable as an equitable remedy, the alternative equitable remedy of front pay should also be unavailable because the plaintiff failed to request such relief.  Jackson has not sought reinstatement as a remedy, see generally Compl. (ECF No. 1), and he failed to demand front pay until recently in the JFPTO.  Because Jackson has not sought the equitable remedy of reinstatement, he is not entitled to the equitable remedy of front pay.

Additionally, Jackson bears the burden of proving the duration of his future lost income and that he has mitigated his damages in relation to any front pay award. Strenkoski, 2014 WL 2573266, at *1 (citing Quinlan, 425 N.J. Super. at 364). He must further prove "what he would have earned had he not suffered the wrong committed by defendant, how long he would have continued to receive those earnings, and a reasonable likelihood that he will not be able to earn that amount in the future, such as through alternative employment." Quinlan, 425 N.J. Super. at 364.

Jackson has failed to provide any evidence or testimony of what he would have earned had GNAC hired him or how long he would have continued to receive those earnings. Jackson has further failed to show that it was probable or even reasonably likely that GNAC was going to hire him. Alternatively, Jackson had a history of exhibiting a personality that clashed with management, which made it unlikely that GNAC would have hired Jackson. Even if GNAC had hired Jackson, his inability to work cordially with management further suggests it was not probable that he would have remained employed with GNAC up to this point. As a result, an award of front pay would place him in a better position than he would have been absent the alleged discrimination. Accord Grasso v. West New York Bd. of Educ., 364 N.J. Super. 109, 125 (App. Div. 2003). GNAC made the decision not to hire Jackson in May 2011. Jackson, however, secured alternate employment with

Showboat Casino in 2011 shortly thereafter. <u>See</u> Exhibit K, Jackson's Resume. He remained with Showboat for nearly three years until the casino closed, and during those three years, he had ample opportunity to re-establish himself in the marketplace but failed to do so.

 Jackson is not entitled to the equitable remedy of front pay, and to allow him to recover such damages when he has insufficiently mitigated his damages would result in an impermissible windfall. <u>See e.g.</u>, <u>Blum v. Witco Chem. Corp.</u>, 29 F.2d 367 374 (3d Cir. 1987); <u>Anastasio v. Schering Corp.</u>, 835 F.2d 701, 709 (3d Cir. 1988) (reasoning that the purpose of front pay is to make a plaintiff whole, not to guarantee an annuity for every claimant who cannot mitigate damages by finding comparable work; <u>McKnight v. General Motors Corp.</u>, 973 F.2d 1366, 1371 (7th Cir. 1992) (reasoning that damages in an employment discrimination case are not intended to ensure a plaintiff's financial success). Jackson has had over five years to re-establish himself in the job market, and by no fault of GNAC, he has failed to do so. The record establishes that any award of front pay is simply not appropriate, and he should be precluded from seeking such an award.

 Jackson is also not entitled to recover future lost earning. Jackson has made no allegations that he suffered any damage to his reputation. Jackson has also failed to allege any diminution of his future ability to obtain employment. Indeed, Jackson actually secured employment with Showboat Casino in Atlantic City as a dealer

shortly after GNAC decided not to hire him. See Exhibit K, Jackson's Resume. He clearly did not suffer, nor has he alleged to have suffered, reputational harm that resulted in a diminution of his ability to obtain employment. As such, Jackson is not entitled to lost future earnings, and he should be precluded from seeking such an award.

## CONCLUSION

For all of the foregoing reasons, GNAC respectfully requests that the Court grant this Motion for Judgment as a Matter of Law limiting any award of back pay damages and disallowing Jackson from any award of front pay and/or future lost earnings.

**FOX ROTHSCHILD LLP**
*Attorneys for Defendant Landry's, Inc. f/k/a Landry's Restaurants, Inc.*

/s/ Eileen Oakes Muskett
Eileen O. Muskett, Esquire
Adam Busler, Esquire
1301 Atlantic Ave, Suite 400
Atlantic City, New Jersey 08402
T: (609) 348-4515; F: (609) 348-6834
emuskett@foxrothschild.com
abusler@foxrothschild.com

Date: January 6, 2017